UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NUMBER 1:25-cv-19-LLK

LORI G.[1]                                                                                              PLAINTIFF

v.

FRANK BISIGNANO,
Commissioner of Social Security                                                        DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff filed a Complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the

Final Decision of the Commissioner denying her claims for Disability Income (DIB) benefits under

Title II of the Social Security Act. [DN 1]. Plaintiff's Fact and Law Summary is at DN 10, the

Commissioner's responsive Fact and Law Summary is at DN 12.[2] No Reply was filed. The parties

have consented to the jurisdiction of the undersigned United States Magistrate Judge to determine

this case, with any subsequent appeal to be filed directly to the United States Court of Appeals for

the Sixth Circuit. [DN 6]. The matter is now ripe for determination.

After examining the administrative record, the ALJ's Decision, the arguments of the parties,

and the applicable authorities, the Court is of the opinion that the Administrative Law Judge's

(ALJ's) Decision is supported by substantial evidence and comports with applicable law.

**Administrative History**. Plaintiff filed her application for DIB on April 4, 2022, alleging

disability which began on August 15, 2020, as a result of back pain, problems with

standing/sitting/walking/bending, neck pain, migraines, allergies, pinched nerve right shoulder,

---

[1] Pursuant to General Order 22-05, Plaintiff's name in this matter is shortened to first name and last initial.
[2] References to specific pages in the Court's Docket in this Memorandum Opinion will include the Docket Number and page number found in the red inked header at the top of the document.

and problems with steps. [DN 5] at 237. She was 54 years old at the date of alleged disability. [DN 5] at 68. Her claim was denied initially and upon reconsideration. Plaintiff requested a hearing before an ALJ which was granted. The hearing was conducted on September 14, 2023, via telephone, with attorney Richard Burchett attending on Plaintiff's behalf. Hearing Transcript, [DN 5] at 38. The hearing was conducted by ALJ Barbara Zanotti of the Office of Hearings Operations in Dover, Delaware. [DN 5] at 40. Also attending and testifying during the hearing was impartial vocational expert Carroll Warren. On December 13, 2023, the ALJ issued an unfavorable Decision finding that Plaintiff was not disabled. [Decision, [DN 5] at 20-31.

Plaintiff timely requested review of the ALJ's Decision by the Appeals Counsel. On December 5,2024, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision. [DN 5] at 6. At that point, the ALJ's Decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a). Thus, this Court will be reviewing the ALJ's Decision and the evidence that was contained within the administrative record at the time the ALJ rendered the Decision. 42 U.S.C. § 405(g).

**The ALJ's Decision**. The ALJ's Decision denying Plaintiff's claims for DIB benefits was based upon the five-step sequential evaluation process which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025, and that she has not engaged in substantial gainful activity since August 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq*.).

At Step Two, the ALJ found that Plaintiff has the following severe impairments: lumbar stenosis with radiculopathy; degenerative disc disease of the cervical spine with radiculopathy; asthma; osteoarthritis of the left wrist with history of left distal radius radial styloid fracture;

2

osteoarthritis of the left knee, obesity; and tendonitis/carpal tunnel syndrome (20 CFR 404.1520(c)).

At Step Three, the ALJ found that Plaintiff does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 303.1525 and 404.1526).

As in any case that proceeds beyond Step Three, the ALJ must determine a claimant's residual functional capacity (RFC), which is defined as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a), 404.1546(c). In making an RFC determination, the ALJ considers the record in its entirety including medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). The ALJ found that, notwithstanding her impairments, Plaintiff retains the RFC to perform a range of sedentary work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except pushing and pulling with the left upper extremity and left lower extremity is limited to frequent; postural activity can be performed occasionally but never climbing ladders, ropes, and scaffolds and never crouching; reaching with the right upper extremity overhead is limited to occasional; otherwise reaching with the right upper extremity is limited to frequent; left upper extremity reaching in all directions is limited to frequent; handling and fingering with the left non-dominant hand is limited to occasional and with the right hand limited to frequent; not more than occasional exposure to extreme temperatures, humidity, vibration, atmospheric irritants such as dust, odors, fumes and gases, and workplace hazards such as unprotected heights and moving machinery.

Decision, [DN 5] at 26.

At Step Four, the ALJ found that Plaintiff is capable of performing past relevant work as a customer complaint clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565) and therefore she has

not been under a disability as defined in the Social Security Act, from August 15, 2020, through the date of the decision (20 CFR 404.1520(f)).

**Standard of Review**. The Court's task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F.App'x 516, 522 (6th Cir. 2008). The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing the record as a whole, the Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 296 (6th Cir. 1994).

The substantial evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the decision. *Id*. If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id*. The Court may look to any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir 2001).

Because Plaintiff filed her DIB claim on April 4, 2022, the new rules for weighing medical opinions apply. See 20 C.F.R. § 404.1520c. Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. § 404.1520c(a). Instead, in

4

determining the persuasiveness of a medical opinion, an ALJ is to consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). However, the ALJ need only explain how she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). Without the treating physician rule, the applicable regulations allow the ALJ to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645 at *6 (6th Cir. June 12, 2024).

**Plaintiff's Arguments**. In her Fact and Law Summary, Plaintiff argues that: 1) the ALJ erred by not finding her mental health impairments (anxiety, depression and PTSD) to be severe, failed to take into consideration her mental health symptoms in determining her RFC, and failed to account for mental health symptoms in finding her capable of returning to her past work as a customer complaint clerk; and 2) the ALJ erred in not finding her hip impairment to be a severe impairment that limits her ability to perform her past work as a customer complaint clerk.

MENTAL IMPAIRMENTS

**Mental Impairments at Step Two.** At Step Two, an ALJ determines whether one or more of a claimant's impairments singly or in combination are severe, meaning that the impairment or combination of impairments "significantly limit[] [their] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). When evaluating a claimant's mental impairments at Steps Two and Three, the regulations require an ALJ to follow a "special" psychiatric review technique ("PRT"). 20 C.F.R. § 404.1520a. Specifically, after evaluating whether an individual has a medically determinable mental impairment, the regulations require an ALJ to rate the degree of

functional limitation resulting from a claimant's mental impairment(s) in four functional areas: the individual's ability to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or manage oneself. *Id*. at § 404.1520a(b)-(c). These four areas of function are commonly referred to as the "paragraph B" criteria.

Plaintiff argues that the ALJ erred in finding that her "medically determinable mental impairments of affective disorder and anxiety disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Decision, [DN 5] at 23. She posits that it was error for the ALJ to: fail to mention her diagnoses of PTSD and recurrent moderate major depressive disorder; to limit the discussion of the "paragraph B" criteria to only 3E and 10E, the Plaintiff's Adult Function Reports which show an "ability to perform daily activities such as prepare meals, pay bills, take medicine, shop, drive and read"; and otherwise fail to cite any of the Plaintiff's mental health treatment records in the Decision. Plaintiff's Brief, [DN 5] at 3-4. The Commissioner's Brief appears to concede that "the decision may be of 'less than ideal clarity'" [DN 12] at 5, but still maintains that the ALJ: laid out sufficient evidence in assessing the paragraph B criteria; elsewhere in the decision found the state agency psychological consultant opinions persuasive; and cites to the Plaintiff's mental health treatment records in support of the ALJ's Decision.

**Step Two Severe Impairment Findings**. The Court must begin with the caveat that the severe impairment inquiry at Step Two is a "threshold inquiry" and the Sixth Circuit has found it to be "legally irrelevant" that some of a claimant's impairments are found to be non-severe when other impairments are found severe. *Anthony v. Comm'r of Soc. Sec.*, 266 F. App'x 451, 457 (6th Cir. 2008); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 658 (6th Cir. 2009). That is, the claimant's burden at Step Two is "a *de minimis* hurdle in the disability determination process."

*Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). Where the ALJ determines that a claimant has at least one severe impairment at Step Two, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in the RFC assessment); *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, ALJ Zanotti did find Plaintiff Gibson to have severe physical impairments— including lumbar stenosis with radiculopathy; degenerative disc disease of the cervical spine with radiculopathy; asthma; osteoarthritis of the left wrist with history of left distal radius radial styloid fracture; osteoarthritis of the left knee; obesity; and tendonitis/carpal tunnel syndrome. Decision, [DN 5] at 22. However, she determined that the claimant's medically determinable mental impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." [DN 5] at 23. The undersigned finds that any error by the ALJ in failing to assign greater limitations in the paragraph B criteria or failure to categorize PTSD and major depressive disorder as severe do not alone constitute reversible error. Based upon this Court's review of the record as a whole, ALJ Zanotti's Step Two conclusions are supported by substantial evidence.

In finding Plaintiff to have only mild limitations in the four broad functional areas, she argues that the ALJ erred in failing to consider the long term mental treatment and only considered the Plaintiff's Adult Function Reports. [DN 10] at 3. At Step Two of the sequential evaluation process, an ALJ must evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If a claimant has a medically determinable mental impairment, an ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to four broad functional areas." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). The four broad functional areas are commonly referred to as the "paragraph B" criteria. The regulations require that the analysis be addressed in the ALJ decision:

> At the administrative law judge hearing and Appeals Council levels, the decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The Decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

In addressing Plaintiff's medically determinable mental impairments, ALJ Zanotti made the following specific findings regarding her degree of limitation in the four functional areas:

> In understanding, remembering, or applying information, the claimant has mild limitations. The claimant alleged that she has difficulty remembering generally and completing tasks. However, the claimant also stated that she could perform simple maintenance, prepare meals, pay bills, take medications, shop, drive, and read (3E, 10E). In addition, the record shows that the claimant was able to provide information about her health, describe her prior work history, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers.

> In interacting with others, the claimant has mild limitations. Here, the claimant alleged that she has difficulty engaging in social activities and getting along with others. However, according to her statements, the claimant is also able to get along

with others, shop, spend time with friends and family, and live with others (3E, 10E). Finally, the medical evidence shows that the claimant had a good rapport with providers, was described as pleasant and cooperative, and appeared comfortable during appointments.

The next functional area addresses the claimant's ability to concentrate, persist, or maintain pace. For this criterion, the claimant has mild limitations. The claimant contended that she has limitations in concentrating generally, focusing generally, and maintaining a regular work schedule. On the other hand, the claimant said that she is also able to drive, prepare meals, watch TV, read, manage funds, and handle her own medical care (3E, 10E). Additionally, the record fails to show any mention of distractibility.

Finally, the claimant has mild limitations in her ability to adapt or manage herself. The claimant asserted that she has difficulties managing her mood. That said, the claimant also stated that she is able to handle self-care and personal hygiene (3E, 10E). Meanwhile, the objective evidence in the record showed the claimant to have appropriate grooming and hygiene and normal mood and affect.

Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere. (20 CFR 404.1520a(d)(1).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

ALJ's Decision, [DN 5] at 23-24.

It is true that the ALJ's paragraph B review is sparce and only cites generally to the Plaintiff's Adult Function Reports at 3E and 10E. However, the Court also recognizes that the ALJ is not required to discuss all evidence submitted and that an ALJ's failure to cite to specific evidence does not indicate that it was not considered. It was appropriate for the ALJ to consider the Plaintiff's function reports as well as the general observations regarding her abilities to provide information about her health and work history, comply with treatment, respond to questions from

medical providers, have good rapport and cooperation with her medical providers, perform many activities of daily living without difficulty, and maintain appropriate grooming and hygiene, normal mood and affect. Decision, [DN 5] at 23. For its part, the Commissioner appears to concede that the "decision may be of less than ideal clarity." The Court agrees. However, the ALJ showed just enough of her work to satisfy the requirements. The Decision does point to the persuasive value the ALJ assigned to the two state agency psychological consultants who opined that Plaintiff has no severe mental impairments. [DN 5] at 29.  Moreover, the Sixth Circuit has found that the special technique of section 404.1520a does not confer any "important procedural safeguard" upon claimants. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 657. Accordingly, the ALJ's failure to more specifically address the four broad areas of functioning is harmless.

**Residual Functional Capacity Findings**. Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. *Dyson v. Comm'r of Soc. Sec.*, 786 F.App'x, 586, 589 (6th Cir. 2019). Typically, a claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of other subjective symptoms. Here, there is no treating or other medical source who opined mental limitations not contemplated by the ALJ's RFC. Furthermore, an ALJ need not incorporate mild limitations from the paragraph B criteria into the RFC. In fact, the Sixth Circuit has held that sometimes even those impairments that are deemed "severe" at Step Two do not always have to be included in the RFC. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007). 20 C.F.R. § 404.1545(e) requires an ALJ to consider the limiting effects of all a claimant's impairments, including any nonsevere ones, in determining a claimant's RFC. When the ALJ's Decision is viewed in light of the record as a whole, the Court must agree with the Commissioner that the ALJ considered

Plaintiff's mental impairments in formulating the RFC and more than a mere scintilla of evidence supports the ALJ's conclusion. [DN 12] at 8.

<u>PHYSICAL IMPAIRMENTS</u>

**Plaintiff's hip impairment at Step Two**. The Plaintiff's second argument is that the ALJ erred in not finding the Plaintiff's hip impairment to be severe. [DN 10] at 7. She posits that the orthopedic records showed hip and groin pain with hip rotation; hip x-rays showed decreased joint space; and pain management records also included complaints of buttock and hip pain. *Id*. In addressing Plaintiff's nonsevere impairments, the ALJ included her mild hip arthritis, stating:

> Besides the impairments listed above, the treatment records also show that the claimant has been treated for hypertension, hyperlipidemia, mild hip arthritis, migraines, allergies, and a pinched nerve in the right shoulder, but the evidence does not support that any of these impairments either singly or in combination cause the claimant more than minimal functional limitations. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

Decision, [DN 5] at 23.

An ALJ's failure at Step Two to find a particular impairment to be severe generally does not constitute reversible error so long as the ALJ found that the claimant had other severe (vocationally significant) impairments and moved on to the other steps prescribed in the regulations. *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987). The fact that an impairment is non-severe does not prevent an ALJ from considering it in her assessment of a claimant's RFC; an ALJ is required to consider both severe and non-severe impairments in assessing a claimant's RFC. 20 C.F.R. § 404.1545(e). "The fact that some of [a claimant]'s impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v, Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); see also *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020) (citing

*Maziarz,* 837 F.2d at 244). Accordingly, the Court can find no reversible error in the ALJ's Step Two findings.

**Plaintiff's Hip Impairment and the RFC Findings**. As noted above, Plaintiff bears the burden of proving a more restrictive RFC than found by the ALJ. A claimant may satisfy this burden by showing that either 1) a treating or other medical source opined limitations not contemplated by the ALJ's RFC and the ALJ erred in discounting the opinion; or 2) the ALJ improperly evaluated the limiting effects of other subjective symptoms.  The Decision references imaging studies taken in September 2021 that "revealed mild decreased joint space and mild arthritis of the hips (3F at 14). The Plaintiff has simply not provided evidence that she suffers from greater limitations than those provided in the RFC as a result of the mild decreased joint space and mild arthritis of the hips noted in her records. Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity for work. Finally, the Court is unpersuaded by Plaintiff's speculative argument that the ALJ erred in failing to consider how Plaintiff's mental functional limitations *could* possibly affect her ability to perform her past relevant work given the level of skill required and stressors involved.

Most disability claims have medical and other evidence that could support findings either way. "As long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

ORDER

Because Plaintiff's arguments are unpersuasive and the Administrative Law Judge's Decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's Complaint is DISMISSED.

March 31, 2026

Lanny King, Magistrate Judge
United States District Court

13